**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER ON DEFENDANT'S FIRST** |
| | ) | **AND SECOND MOTIONS IN LIMINE** |
| vs. | ) | |
| | ) | Case No. 3:19-cr-00040 |
| Paul Henry Cavanaugh, | ) | |
| | ) | |
| Defendant. | ) | |

Trial in the above-captioned case is scheduled to commence on August 11, 2020. Now before the Court are Defendant Paul Henry Cavanaugh's first motion in limine filed on May 1, 2020 and second motion in limine filed on May 20, 2020. Doc. Nos. 71, 75. The Government responded to both motions on July 2, 2020. Doc. Nos. 91, 92. A two-count superseding indictment charges Cavanaugh with sexual abuse of an incapacitated victim, in violation of 18 U.S.C. §§ 2242(2)(A), 2242(2)(B), and 1153, and aggravated sexual abuse by force, in violation of 18 U.S.C. §§ 2241(a)(1) and 1153. Doc. No. 60. The Government avers that Cavanaugh sexually assaulted then 18-year-old A.L. at his home on the Spirit Lake Indian Reservation in the early hours of March 15, 2018.

## I.     FIRST MOTION IN LIMINE

Cavanaugh's first motion targets a wide variety of evidence. Namely, the motion seeks exclusion of: (1) audio recordings of law enforcement interviews with A.L. created on March 15, 2018 and November 15, 2019; (2) audio recordings of law enforcement interviews with A.L.'s mother, H.L., also created on March 15, 2018 and November 15, 2019; (3) testimony from A.L. referring to Cavanaugh as her uncle, testimony from A.L. claiming that the alleged sexual assault caused her to contract a sexually transmitted infection, and testimony from A.L. regarding her

attempting suicide by overdosing on pills shortly after the alleged sexual assault occurred; and (4) testimony from H.L. alleging that Cavanaugh also attempted to sexually assault her in the past, testimony from H.L. opining that Cavanaugh had a reputation for sexually assaulting other women at his house, and testimony from H.L. regarding A.L. attempting suicide by overdosing on pills shortly after the alleged sexual assault occurred.

In response, the Government conditionally disclaims an intent to offer the audio recordings of the law enforcement interviews with A.L. and H.L. in its case-in-chief. The Government likewise does not plan to elicit testimony in its case-in-chief regarding A.L. contracting a sexually transmitted infection or Cavanaugh's purported reputation for sexually assaulting other women at his house. Considering the response, the Court will reserve ruling on those issues until the need arises at trial, if at all.

For the issues the Government opposes, Cavanaugh relies primarily on Rule 403 of the Federal Rules of Evidence. Under that Rule, otherwise relevant evidence is subject to exclusion if the danger of unfair prejudice or confusing or misleading the jury substantially outweighs the probative value of the evidence. Fed. R. Evid. 403. "Unfairly prejudicial evidence is so inflammatory on its face as to divert the jury's attention from the material issues in the trial." United States v. Fechner, 952 F.3d 954, 958 (8th Cir. 2020) (citing United States v. Betcher, 534 F.3d 820, 825 (8th Cir. 2008)). Rule 403 "does not offer protection against evidence that is merely prejudicial in the sense of being detrimental to a party's case." United States v. Petroske, 928 F.3d 767, 772 (8th Cir. 2019) (citations omitted).

### A.   A.L. Referring to Cavanaugh as Her Uncle

Without explaining how, Cavanaugh contends that A.L. referring to him as her uncle during trial will result in unfair prejudice and mislead the jury. The Court disagrees. Cavanaugh

2

and A.L. are first cousins, once removed.  Doc. Nos. 95, 95-1.  Still, they frequently refer to one another as uncle and niece.  See Doc. No. 96, p. 13.  Both parties will have ample opportunity to elicit testimony on the technical familial relationship between the two to alleviate any potential for confusion.  There is probative value in this testimony, as well, insofar as it may explicate the relationship between A.L. and Cavanaugh.  A.L. may thus refer to Cavanaugh as her uncle at trial.

### B.     A.L. Suicide Attempt

Similarly, the Court declines to exclude testimony describing A.L.'s suicide attempt in the wake of the alleged sexual assault.  That potential testimony bears on A.L.'s recall of the events and is relevant to whether she had the capacity to apprise the nature of Cavanaugh's conduct and her ability to decline participation in that conduct.  See 18 U.S.C. § 2242(2).  And due to the close temporal proximity of the suicide attempt, the testimony provides full context for the charged crimes.  See United States v. Lafontaine, No. 15-CR-77-LRR, 2015 WL 5999834, at *3 (S.D. Iowa Oct. 14, 2015) (finding testimony regarding victim's reaction to alleged crime admissible for context purposes).  In turn, the testimony is unlikely to be so provocative as to divert the jury's attention from the central sexual abuse allegation.  Fechner, 952 F.3d at 958 ("Evidence does not need to be excluded merely because it is disturbing.").  Testimony pertaining to the suicide attempt from either A.L. or H.L. is admissible as a result.

### C.     H.L. Allegation of Past Sexual Assault Attempt

"Evidence of prior bad acts is generally not admissible to prove a defendant's character or propensity to commit a crime."  United States v. Keys, 918 F.3d 982, 986 (8th Cir. 2019) (citing Fed. R. Evid. 404(b)).  As an exception to that principle, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault.  The evidence may be considered on any matter to which it is relevant."  Fed.

R. Evid. 413(a).  Cavanaugh raises three distinct objections to potential testimony from H.L. claiming that he attempted to sexually assault her more than 20 years ago.  First, Cavanaugh contends that H.L.'s allegation does not meet the definition of "sexual assault" in Rule 413(d).  Second, he assails the allegation as unsubstantiated.  And third, he argues the evidence is unfairly prejudicial.  Each argument is unpersuasive.

To start, Rule 413's definition of "sexual assault" encompasses "any conduct prohibited by 18 U.S.C. chapter 109A," as well as any attempt to engage in such conduct.  Fed. R. Evid. 413(d)(1) and (5).  H.L. stated in two interviews with law enforcement that Cavanaugh previously "tried" to do the "same thing" to her that he allegedly did to A.L., but she stopped him.  If so, that "same thing" would, at minimum, constitute attempted conduct meeting the elements of 18 U.S.C. § 2241(a)(1) (codified in chapter 109A), which requires proof that a defendant knowingly caused a person to engage in a sexual act by using force.  The allegation accordingly meets the basic definition of "sexual assault" in Rule 413(d).

Further, H.L.'s allegation is both relevant and preliminarily supported by sufficient evidence to warrant presentation to the jury.  "A relevant sexual assault is one committed in a manner similar to the charged offense."  United States v. Never Misses A Shot, 781 F.3d 1017, 1027 (8th Cir. 2015) (quoting United States v. Rodriguez, 581 F.3d 775, 796 (8th Cir. 2009)).  "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."  Fed. R. Evid. 104(b).  "In making this determination, the court does not weigh the evidence or make credibility determinations, but instead 'simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.'"  United States v.

Armstrong, 782 F.3d 1028, 1034-35 (8th Cir. 2015) (quoting Huddleston v. United States, 485 U.S. 681, 690 (1988)).

Cavanaugh's alleged past sexual assault attempt against H.L. is plainly relevant propensity evidence. H.L. asserts that Cavanaugh attempted the "same thing" on her when she was 28 years old. Moreover, H.L.'s two consistent statements—made to law enforcement more than 18 months apart—demonstrate that a reasonable jury could find by a preponderance of the evidence that the alleged attempt occurred. Rest assured, Cavanaugh will have an opportunity on cross-examination to test H.L.'s credibility and highlight the length of time that has elapsed since the alleged conduct took place. And the jury will ultimately weigh her testimony to determine the veracity of the allegation. At this early stage, however, sufficient evidence exists to support consideration by the jury. Cavanaugh remains free to renew his objection upon conclusion of H.L.'s testimony. See id. (quoting Huddleston, 485 U.S. at 690) ("If, after the [conditionally relevant] evidence is presented to the jury, the trial court determines that a reasonable jury could not conclude the defendant committed the prior act, then it 'must instruct the jury to disregard the evidence.'").

Finally, even when Rule 413 evidence is relevant, "admissibility hinges on whether the testimony's probative value is substantially outweighed by one or more of the factors enumerated in Rule 403." United States v. Oldrock, 867 F.3d 934, 938 (8th Cir. 2017) (quoting Rodriguez, 851 F.3d at 796). H.L.'s testimony is unquestionably prejudicial to Cavanaugh, tending to show that he has a propensity to commit sexual assaults on female family members. But that prejudice is not unfair. See United States v. Hollow Horn, 523 F.3d 882, 888 (8th Cir. 2008) (citation omitted) ("Because this specific type of propensity evidence is admissible under Rule 413, . . . its prejudice [is not] *unfair*."); United States v. Gabe, 237 F.3d 954, 960 (8th Cir. 2001) (finding no unfair prejudice under analogous Rule 414 where "testimony is prejudicial . . . for the same reason

it is probative"); United States v. Butler, 56 F.3d 941, 944 (8th Cir. 1995) ("Because the [propensity] evidence was so similar to the acts charged, it would not be so facially inflammatory as to unduly divert attention from the issues of the case."). Any concerns Cavanaugh might have with the jury conflating the purported attempt against H.L. and the alleged completed crimes against A.L. can be adequately addressed on cross-examination. In sum, H.L.'s proposed testimony claiming that Cavanaugh previously attempted to sexually assault her is admissible.

## II.    SECOND MOTION IN LIMINE

The second motion requests the exclusion of statements made during Cavanaugh's interview with law enforcement on February 6, 2019. In the interview, two Special Agents from the Bureau of Indian Affairs confronted Cavanaugh with results from DNA comparison testing conducted by the North Dakota State Crime Laboratory. Doc. No. 96-1. The lab report concluded that a Y-chromosomal profile developed from a vaginal swab from A.L. matched a Y-chromosomal profile developed from a buccal swab from Cavanaugh. Doc. No. 79, p. 2. According to the report, that result indicated that neither Cavanaugh nor any of his paternally related male relatives could be excluded as contributors of the male DNA recovered from the vaginal swab. Id. When the BIA agents questioned Cavanaugh, they apprised him multiple times that his DNA had been found in A.L.'s vagina without the qualifying language from the lab report. Again relying on Rule 403, Cavanaugh seeks to exclude the agents' statements regarding the DNA evidence from their testimony and from the audio recording of the interview if offered.

The absolute nature of the BIA agents' statements could possibly mislead or confuse the jury to some degree. The lab report itself does not definitively establish Cavanaugh as the source of the DNA like the agents indicated during the interview. Even so, that concern ultimately does not substantially outweigh the interview's probative value when considered contextually. The

probative value of Cavanaugh's responses to the interview prompts is high. Cavanaugh stated in his first interview with law enforcement on March 21, 2018 that he remembered everything from the night of the alleged sexual assault. Doc. No. 96, p. 19. He asserted unequivocally that A.L. had not been at his house and that he had not sexually assaulted her. Id. at 18-20. But when confronted with the results of the DNA comparison testing—overplayed or not—he then claimed a lack of memory, appearing to partially blame the amount of alcohol he consumed that night. Doc. No. 96-1, pp. 7-14. The conflicting responses are germane to Cavanaugh's credibility, and the jury should hear them along with the full context of the accompanying interview prompts.

Mitigating the conclusive character of the agents' statements to an extent, the Government intends to present expert testimony on the DNA evidence that will clarify the scope of the lab report's findings. See Doc. Nos. 88, 89. Cavanaugh may also address any inconsistencies with the interview statements and the lab report on cross-examination. Lastly, the Court will provide a limiting instruction directing the jury not to consider the agents' statements for the purpose of determining the strength of the DNA evidence. With all that said, the Court will not exclude the challenged testimony or the audio recording under Rule 403.

### III.  CONCLUSION

The Court has reviewed the record, the parties' filings, and the relevant legal authority. With the exception of the issues the Court reserved ruling on, Cavanaugh's first motion in limine (Doc. No. 71) is **DENIED**. The second motion in limine (Doc. No. 75) is **DENIED** in all respects.

**IT IS SO ORDERED**.

Dated this 23rd day of July, 2020.

/s/ Peter D. Welte
Peter D. Welte, Chief Judge
United States District Court